1  S. Peter Serrano
   United States Attorney
2  Eastern District of Washington
   Courtney R. Pratten
3  Assistant United States Attorney
   Echo D. Fatsis
4  Contract Law Clerk
   402 E. Yakima Ave, Suite 210
5  Yakima, WA 98901
   Telephone: (509) 454-4425
6

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 1 4 2025

SEAN F. MCAVOY, CLERK
YAKIMA, WASHINGTON

ECF No. 1

7
          UNITED STATES DISTRICT COURT
8        FOR THE EASTERN DISTRICT OF WASHINGTON
9

10  UNITED STATES OF AMERICA,          **1:25-CR-2120-SAB**

11                    Plaintiff,        INDICTMENT

12          v.                          Vio: 18 U.S.C. § 371
                                             Conspiracy to Defraud the
13  ANNA ELPERIN,                            Department of Transportation
                                             (Count 1)
14
                      Defendant.             18 U.S.C. § 1001(a)(2)
15                                           Making a False Writing or
                                             Document
16                                           (Counts 2-7)

17                                           18 U.S.C. § 1519
                                             Falsification of Federal
18                                           Records
                                             (Counts 8-13)
19
                                             21 U.S.C. §§ 846, 841(a)(1),
20                                           (b)(1)(C), (b)(2), 843(a)(3)
                                             Conspiracy to Dispense
21                                           Controlled Substances and to
                                             Acquire Controlled Substances
22                                           by Misrepresentation, Fraud, or
                                             Deception
23                                           (Count 14)

24

25

26

27

28

INDICTMENT – 1



18 U.S.C. § 1035
False Statements Relating to
Health Care Matters
(Counts 15-17)

21 U.S.C. §§ 841(a)(1),
(b)(1)(C), (b)(2)
Dispensing and Distribution of
Controlled Substances
(Counts 18-22)

21 U.S.C. § 843(a)(3)
Acquiring or Obtaining a
Controlled Substance by
Misrepresentation, Fraud, or
Deception
(Counts 23-26)

18 U.S.C. § 982,
21 U.S.C. § 853,
28 U.S.C. § 2461
Forfeiture Allegations

The Grand Jury charges:

## OVERVIEW OF SCHEMES AND CONSPIRACIES

1. Beginning in or around July 2018, and continuing through on or about September 20, 2022, Defendant ANNA ELPERIN (ELPERIN), a licensed Osteopathic Physician residing and practicing medicine in the Eastern District of Washington, together with other conspirators both known and unknown to the Grand Jury, devised, perpetrated, and participated in carrying out a scheme, artifice, and conspiracy designed to enrich Defendant ELPERIN by issuing false and fraudulent prescriptions for purported patients, employees, and other co-conspirators without a legitimate medical purpose and outside the course of professional practice. Defendant ELPERIN's co-conspirators then provided some

INDICTMENT – 2

or all of the controlled substances back to Defendant ELPERIN for her own personal use.

2.      Separately, beginning on or about September 25, 2018 and continuing until on or about September 16, 2022, Defendant ELPERIN, together with other conspirators both known and unknown to the Grand Jury, devised, perpetrated, and participated in a scheme and conspiracy to defraud the United States Department of Transportation by falsifying commercial driver's license (CDL) tests and other medical information for applicants who had disqualifying medical conditions and/or were otherwise ineligible to receive CDLs.

## INTRODUCTION AND BACKGROUND

At all times relevant and material to the Indictment:

3.      Defendant ELPERIN, was a resident of the Eastern District of Washington.

4.      Defendant ELPERIN was a medical doctor licensed by the State of Washington to practice medicine as a Doctor of Osteopathic Medicine and Surgery (D.O.).

5.      Defendant ELPERIN owned and operated a medical practice, Awake Health, PLLC, which was located in Ellensburg, Washington, in the Eastern District of Washington. At Awake Health, Defendant ELPERIN employed staff, saw and treated patients, issued prescriptions, and performed CDL examinations.

### Federal Motor Carrier Safety Administration and Commercial Driver's License Physical Requirements

6.      The Federal Motor Carrier Safety Administration (FMCSA) is an administration of the United States Department of Transportation (DOT). The FMCSA's mission is to reduce crashes, fatalities, and injuries involving large trucks and buses. It has done so, in part, by promulgating regulations governing the issuance of CDLs. CDLs are specialized licenses issued by state governments and authorizing individuals to operate large, or heavy, commercial vehicles. While

INDICTMENT – 3

state governments issue CDLs, the FMCSA regulations promulgated by DOT set minimum standards that must be met before a state can issue a CDL. The regulations governing CDLs are found in Title 49 of the Code of Federal Regulations. The regulations are referred to as the Federal Motor Carrier Safety Regulations.

7.      Section 391.41 of Title 49 of the Code of Federal Regulations contains a regulation promulgated by the FMCSA requiring that no person operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so. The regulation also defines specific criteria that must be met for a person to be considered physically qualified. Among those criteria are criteria related to an individual's vision, cardiovascular health, hearing, pulmonary health, and history of diabetes.

8.      To ensure that individuals seeking or possessing a CDL are physically qualified, Section 391.41 requires that all persons seeking a CDL undergo an initial medical examination conducted by a licensed medical professional and that all persons holding a CDL undergo a subsequent medical examination at least every two years to ensure that they remain medically qualified and can continue to safely operate a commercial vehicle. These medical examinations are commonly referred to as "DOT physicals."

9.      Section 390.103 of Title 49 of the Code of Federal Regulations defines criteria for becoming a certified medical examiner. Those criteria require that a person seeking to be a certified medical examiner: (1) be a licensed health care professional (including a physician, osteopath, physician's assistant, or advanced practice nurse); (2) register on the National Registry website and receive a National Registry number; (3) complete a FMCSA-accredited training program; and (4) pass the FMCSA's medical examiner certification test. As part of completing a FMCSA-accredited training, medical examiners are instructed on the obtaining, reviewing, and documenting operator medical history in addition to

INDICTMENT – 4

instruction on performing, reviewing, and documenting the operator's medical examination, among other things. Medical examiners are also instructed about FMCSA reporting and documentation requirements during their required training.

10.    Section 391.43 of Title 49 of the Code of Federal Regulations sets forth specific components that must be present in a valid DOT physical. Specifically, a valid DOT physical is to consist of: (1) a review of the subject's health history, including a listing of past surgeries, current medications, and diagnosed medical conditions; (2) a check of the subject's pulse rate and blood pressure; (3) a check of the subject's height and weight; (4) an analysis of a sample of the subject's urine for the presence of sugars and proteins that could be indicative of diabetes; (5) tests of the subject's vision; (6) tests of the subject's hearing; and (7) a general review of the subject's appearance and bodily systems.

11.    Generally, insulin-treated diabetes mellitus is a disqualifying condition of the DOT physical under Section 391.41(b)(3) of Title 49 of the Code of Federal Regulations, unless additional regulatory requirements set forth in Section 391.46 are satisfied. Under Section 391.46, for an individual with insulin-treated diabetes mellitus to be physically qualified to operate a commercial motor vehicle several additional conditions must be met. These additional conditions include an additional evaluation and assessment by their treating clinician and a completed Insulin-Treated Diabetes Mellitus Assessment Form, MCSA-5870. For the purposes of Section 391.46, a "treating clinician" means any healthcare professional who manages, and prescribes insulin for, the treatment of the individual's diabetes mellitus as authorized by their State licensing authority. These additional requirements are necessary to ensure that CDL holders with a history of diabetes can safely operate commercial vehicles and, if they are not met, an individual with diabetes treated with insulin is not medically eligible to hold a CDL.

INDICTMENT – 5

12.    Section 391.43 also requires that a certified medical examiner complete the Medical Examination Report, Form MCSA-5875, during the course of a DOT physical. This form is commonly referred to as a "long form." The first section of the long form is the "driver history" section. It was to be completed by the individual undergoing the DOT physical. In the driver history section, the subject is to provide comprehensive information regarding their present and historical health. The second section is the "examination report." That section is to be completed by the medical examiner. In the examination report, the medical examiner reports on the results of the requisite tests and checks. At the conclusion of the long form, the medical examiner states whether or not the subject was medically qualified pursuant to the Federal Motor Carrier Safety Regulations. The examiner is to then sign the form and provide their unique National Registry number. Above the signature line is the following certification to which the examiner must agree: "I have performed this evaluation for certification. I have personally reviewed all available records and recorded information pertaining to this evaluation, and attest to the best of my knowledge, I believe it to be true and correct."

13.    If a medical examiner deemed a subject physically qualified, then Section 391.43 requires the medical examiner to complete another form, the Medical Examiner's Certificate, MCSA-5876. That form is commonly referred to as a "medical card." The medical card is a one-page document verifying that the subject met the physical qualification criteria. It is to be signed by the medical examiner physician. The medical card includes the following certification to which the medical examiner must agree: "The information I have provided regarding this physical examination is true and complete. A complete Medical Examination Report Form, MCSA-5875, with any attachments embodies my findings completely and correctly, and is on file in my office."

INDICTMENT – 6

14.     Section 391.43 also required that, if a medical examiner deemed a subject physically qualified, then the medical examiner is to: (1) make copies of both the long form and the medical card; (2) give the original versions of both forms to the subject; and (3) retain the copies on file in his or her office for no less than three years. The regulation also states that, by midnight of the next calendar day, a medical examiner shall transmit a completed CMV (Commercial Motor Vehicle) Driver Medical Examination Results Form, MCSA-5850—which contains information from the Medical Examination Report MCSA-5875, the Medical Examiner's Certificate MCSA-5876, and any Diabetes Assessment Form MCSA-5870—associated with all DOT physicals performed during the preceding calendar day by the medical examiner to the FMCSA via a secure FMCSA-designated website and portal.  Each medical examiner listed on the National Registry has their own username and password to facilitate transmitting these documents to the FMCSA.

15.     The FMCSA regularly conducts periodic reviews of randomly selected medical examiners listed on the National Registry Website to ensure that examinations are being conducted properly. During the performance audit, the FMCSA examines a representative sample of MCSA-5875 forms from the medical examiner. If a registered medical examiner has not submitted MCSA-5850 forms to the FMCSA within the last two years, the medical examiner is removed from the pool of medical examiners which could potentially be randomly selected for auditing. Therefore, by failing to comply with the requirements of Section 391.43, a medical examiner can avoid a performance review.

<u>Drug Enforcement Administration Regulations for Practitioners</u>

16.     The Drug Enforcement Administration (DEA) is a component of the United States Department of Justice. The DEA's mission is to regulate, administer, and enforce laws and regulations concerning the dispensing and distribution of controlled substances.  A "controlled substance" is a drug or other substance, or

INDICTMENT – 7

immediate precursors, included in Schedule I, II, III, IV, or V. 21 U.S.C. § 802(6); 21 C.F.R. § 1300.01. The Controlled Substances Act "places substances in one of five schedules based on their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision." *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006). Schedule I contains the most severe restrictions on access and use, and Schedule V the least. *Id.*; 21 U.S.C. § 812. Part 1306 of Chapter 21 of the Code of Federal Regulations sets forth the rules governing the issuance, filling, and filing of controlled substance prescriptions pursuant to 21 U.S.C. § 829.

17.    To issue a prescription for a controlled substance, an individual practitioner must be registered or exempt pursuant to 21 C.F.R. §§ 1301.22(c) and 1301.23, and authorized to prescribe controlled substances under their license's jurisdiction. 21 C.F.R. § 1301.11. A prescription for controlled substances must be issued for a legitimate medical purpose by a qualified individual practitioner acting in the usual course of their professional practice. 21 C.F.R. § 1306.04.

Health Care Benefit Programs

18.    The Medicaid Program ("Medicaid") is a state-administered health insurance program funded by the United States Government and by individual states. Medicaid helps pay for reasonable and necessary medical procedures and services provided by qualified health care professionals to individuals who are deemed eligible under state low-income programs. Among the types of reimbursable medical assistance available to Medicaid recipients are office visits, diagnostic testing, prescription drugs, and durable medical equipment. Medicaid is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

19.    Commercial insurance companies provide health care benefits for individuals enrolled with their plans, often referred to as "members." Commercial insurance companies, employers, and private entities offer drug benefits as part of

INDICTMENT – 8

their health care benefit plans, such that when a member fills a prescription issued by a provider, the pharmacy can submit a claim for insurance benefits to cover part or all of the cost of that prescription to the health care benefit plan. These commercial insurance plans affect commerce and are "health care benefit programs" within the meaning of Title 18, United States Code, Section 24(b).

## COUNT 1

### CONSPIRACY TO DEFRAUD THE DEPARTMENT OF TRANSPORTATION

20.     The Grant Jury re-alleges and incorporates by reference Paragraphs 1 through 19 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth herein.

21.     Beginning no later than on or about September 25, 2018, and continuing until at least on or about September 16, 2022, in the Eastern District of Washington, Defendant ELPERIN, together with other persons known and unknown to the Grand Jury, knowingly and intentionally conspired, combined, and agreed to: (1) knowingly and willfully make false writings and documents within the jurisdiction of the Executive Branch of the United States, in violation of 18 U.S.C. § 1001(a)(2); and (2) defraud the United States DOT of the following individually described lawful functions and rights:

(a) The right to have the business and affairs of the United States, and particularly the transactions of official business of the United States DOT, conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction;

(b) The right to have federal officers and employees free to transact the official business of the United States unhindered, unhampered, unobstructed, and unimpaired by the exertion upon them of dishonest, corrupt, unlawful, improper, and undue pressure and influence; and,

INDICTMENT – 9

(c) The right to have the unimpeded governmental function of the DOT to receive and review true and accurate required CDL documentation concerning the medical eligibility and medical information concerning CDL applicants, including, but not limited to, MSCA-5870, MSCA-5875, and MSCA-5876; and to ensure that only medically eligible CDL applicants are approved for CDL and CDL renewals.

<u>Ways, Manners, and Means of the Conspiracy</u>

22.     It was part of the conspiracy that Defendant ELPERIN and Awake Health held themselves out to the public as engaged in the performance of legitimate DOT physicals. When a patient came into Awake Health's office seeking a DOT physical, Defendant ELPERIN would charge that person $150 in United States Currency. Defendant ELPERIN rarely, if ever, failed to approve an applicant who paid the required $150 in United States Currency.

23.     Defendant ELPERIN and her known and unknown co-conspirators failed to conduct appropriate physical examinations in accordance with DOT regulations.  Many of the physical examinations were performed by office staff employed by Defendant ELPERIN who were not approved medical examiners, and in many cases those staff members lacked either a professional medical license or appropriate medical training.  Defendant ELPERIN, and her known and unknown co-conspirators, often failed to perform required parts of the examination, entered false and inaccurate information into required documentation, or certified as medically eligible applicants who had disqualifying medical conditions.

24.     Defendant coached co-conspirator CDL applicants who came to Awake Health to obtain the required CDL medical exam. For example, if an applicant had high blood pressure, ELPERIN or her co-conspirators would instruct the individual to lay down in an examination room—often in the dark—for a long period—often hours—with the goal of decreasing the individual's blood pressure

to a level at which the individual would appear to be medically qualified for a CDL.

25.     After she and her employees conducted the CDL medical examination, Defendant ELPERIN would invariably approve and sign the examination form indicating that the applicant had passed and was medically eligible for a CDL. Defendant ELPERIN approved and signed CDL examination forms where the applicant had a disqualifying medical condition based on medical records themselves.  Additionally, Defendant ELPERIN approved and signed CDL examination forms where portions of the medical examination were never conducted, or where necessary findings or determinations were missing. Finally, Defendant ELPERIN approved and signed CDL examination forms in which records had been falsified to make it appear as though the applicant was medically eligible.  Defendant ELPERIN falsely certified on necessary forms that the information was true and correct, that she had completed all necessary portions of the examination, and that the applicant was medically eligible for a CDL.

26.     After completing the MCSA-5875 form and MCSA-5876, Defendant ELPERIN and her known and unknown co-conspirators would make a copy of the forms, shrink the medical card down to pocket size, and provide a copy to the patient. Defendant ELPERIN also retained a copy in the records of Awake Health. However, Defendant ELPERIN failed to electronically transmit to the MSCA-5850 form, as she was required to do pursuant to 49 C.F.R. § 391.43(g)(5)(i)(B). In failing to do so, Defendant ELPERIN did not comply with the requirements set forth in 49 C.F.R. § 391.41.  Defendant ELPERIN's failure to electronically transmit the records defrauded and obstructed DOT's regulatory process.  If DOT had the opportunity to review the medical documentation and forms Defendant ELPERIN approved and signed, DOT could have determined that the applicants were not medically qualified to receive CDLs and that Defendant ELPERIN was not fulfilling her responsibilities as a certified DOT CDL medical examiner.

INDICTMENT – 11

27.     Defendant ELPERIN engaged in this scheme and conspiracy to obtain future business from CDL applicants.  The CDL applicants knew Defendant ELPERIN would approve them for CDLs whether they were medically qualified or not, and she would approve them even if they had a disqualifying medical condition.

Overt Acts

28.     Paragraphs 1 through 27 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

29.     In furtherance of the conspiracy, and to accomplish the objects thereof, Defendant ELPERIN and her known and unknown co-conspirators committed overt acts, in the Eastern District of Washington. The overt acts included, but were not limited to, the following.

30.     In furtherance of the conspiracy to make false statements and to defraud the DOT, on or about August 23, 2021, Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 1, who is known to the Grand Jury, in accordance with DOT regulations, and that CDL Applicant 1 met the requirements of 49 C.F.R. § 391.41, when, in fact: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) CDL Applicant 1 had a disqualifying medical condition, that is, diabetes mellitus treated with insulin, and the requirements set forth in 49 C.F.R. § 391.46 were not satisfied; (3) Defendant ELPERIN failed to properly test and apply the hypertension, vision, and hearing standards; and (4) Defendant ELPERIN did not transmit the MCSA-5850 or MCSA- 5870 form to DOT as required.

31.     In furtherance of the conspiracy to make false statements and to defraud the DOT, on or about October 21, 2021, Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 2, who is known to the Grand

INDICTMENT – 12

Jury, in accordance with DOT regulations, and that CDL Applicant 2 met the requirements of 49 C.F.R. § 391.41, when, in fact: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the vision and hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required.

32.    In furtherance of the conspiracy to make false statements and to defraud the DOT, on or about October 21, 2021, Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 3, who is known to the Grand Jury, in accordance with DOT regulations, and that CDL Applicant 3 met the requirements of 49 C.F.R. § 391.41, when, in fact: (1) Defendant ELPERIN had not conducted and recorded a proper physical; (2) Defendant ELPERIN failed to properly test and apply the hypertension, vision, and hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required.

33.    In furtherance of the conspiracy to make false statements and to defraud the DOT, on or about October 26, 2021, Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 4, who is known to the Grand Jury, in accordance with DOT regulations, and that CDL Applicant 4 met the requirements of 49 C.F.R. § 391.41, when, in fact: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required.

34.    In furtherance of the conspiracy to make false statements and to defraud the DOT, on or about January 12, 2022, Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 5, who is known to the Grand

INDICTMENT – 13

Jury, in accordance with DOT regulations, and that CDL Applicant 5 met the requirements of 49 C.F.R. § 391.41, when, in fact: (1) Defendant ELPERIN had not conducted and recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required.

36.     In furtherance of the conspiracy to make false statements and to defraud the DOT, on or about February 21, 2022, Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 6, who is known to the Grand Jury, in accordance with DOT regulations, and that CDL Applicant 6 met the requirements of 49 C.F.R. § 391.41, when, in fact: (1) Defendant ELPERIN had neither conducted nor recorded a proper examination; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required.

All in violation of 18 U.S.C. § 371.

## COUNTS 2 - 7

### FALSE STATEMENTS

36.     The Grant Jury re-alleges and incorporates by reference Paragraphs 1 through 35 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth herein.

37.     On or about each of the dates set forth below, in the Eastern District of Washington, Defendant ELPERIN knowingly made false writings and documents, knowing those documents to contain materially false, fictitious, and fraudulent statements and entries in a matter within the jurisdiction of the DOT, each document constituting a separate count:

| Count | Date | Description |
|-------|------|-------------|
| 2 | On or about August 23, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 1, in accordance with DOT regulations, and that CDL Applicant 1 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN neither conducted nor recorded a proper physical examination; (2) CDL Applicant 1 had a disqualifying medical condition, that is, diabetes mellitus treated with insulin, and the requirements set forth in 49 C.F.R. § 391.46 were not satisfied; (3) Defendant ELPERIN failed to properly test and apply the hypertension, vision, and hearing standards; and (4) Defendant ELPERIN did not transmit the MCSA-5850 or MCSA- 5870 forms to DOT as required. |
| 3 | On or about October 21, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 2, in accordance with DOT regulations and that CDL Applicant 2 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the vision and hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |
| 4 | On or about October 21, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 3, in accordance with DOT regulations and that CDL Applicant 3 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hypertension, vision, and hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |
| 5 | On or about October 26, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 4, in |

INDICTMENT – 15

| | | accordance with DOT regulations and that CDL Applicant 4 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |
|---|---|---|
| 6 | On or about January 12, 2022 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 5, in accordance with DOT regulations and that CDL Applicant 5 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN had not conducted and recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |
| 7 | On or about February 21, 2022 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 6, in accordance with DOT regulations and that CDL Applicant 6 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN had not conducted and recorded a proper physical; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |

All in violation of 18 U.S.C. § 1001(a)(2).

## COUNT 8-13

### FALSIFICATION OF FEDERAL RECORDS

38.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 37 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth herein.

INDICTMENT – 16

39.    On or about each of the dates set forth below, in the Eastern District of Washington, Defendant ELPERIN knowingly falsified and concealed DOT records with the intent to impede, obstruct, or influence the investigation or proper administration of a matter within the jurisdiction of the DOT, an agency of the United States, each application constituting a separate count in the Indictment.

| Count | Date | Description |
|-------|------|-------------|
| 8 | On or about August 23, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 1, in accordance with DOT regulations and that CDL Applicant 2 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN neither conducted nor recorded a proper physical examination; (2) CDL Applicant 1 had a disqualifying medical condition, that is, diabetes mellitus treated with insulin, and the requirements set forth in 49 C.F.R. § 391.46 were not satisfied; (3) Defendant ELPERIN failed to properly test and apply the hypertension, vision, and hearing standards; and (4) Defendant ELPERIN did not transmit the MCSA-5850 or MCSA- 5870 forms to DOT as required. |
| 9 | On or about October 21, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 2, in accordance with DOT regulations and that CDL Applicant 2 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the vision and hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |
| 10 | On or about October 21, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 3, in accordance with DOT regulations and that CDL Applicant 3 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) |

| | | Defendant ELPERIN neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hypertension, vision, and hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 or form to DOT as required. |
|---|---|---|
| 11 | On or about October 26, 2021 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 4, in accordance with DOT regulations and that CDL Applicant 4 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |
| 12 | On or about January 12, 2022 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 5, in accordance with DOT regulations and that CDL Applicant 5 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN had neither conducted nor recorded a proper physical examination; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |
| 13 | On or about February 21, 2022 | Defendant ELPERIN knowingly and falsely stated and certified on DOT form MCSA-5875 that she performed a medical examination of a person, CDL Applicant 6, in accordance with DOT regulations and that CDL Applicant 6 met the requirements of 49 C.F.R. § 391.41, when, in fact, as Defendant ELPERIN then and there knew: (1) Defendant ELPERIN neither conducted nor recorded a proper physical; (2) Defendant ELPERIN failed to properly test and apply the hearing standards; and (3) Defendant ELPERIN did not transmit the MCSA-5850 form to DOT as required. |

All in violation of 18 U.S.C. § 1519.

INDICTMENT – 18

1

2

**COUNT 14**

CONSPIRACY TO DISPENSE CONTROLLED SUBSTANCES

40.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 39 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth herein.

41.    Beginning on or about a date unknown to the Grand Jury, but no later than on or about July 1, 2018, and continuing until at least on or about September 20, 2022, in the Eastern District of Washington, Defendant ELPERIN knowingly and intentionally combined, conspired, confederated, and agreed with other persons, known and unknown to the Grand Jury, to commit the following offenses: (1) distribution of controlled substances, including lorazepam, a Schedule IV controlled substance; hydrocodone, a Schedule II controlled substance; methylphenidate HCL, a Schedule II controlled substance; dextroamphetamine-amphetamine, a Schedule II controlled substance; and, Adderall, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and (2) obtaining the aforementioned controlled substances by means of fraud, misrepresentation, deception, and subterfuge.

MANNER AND MEANS AND OVERT ACTS

42.    Between on or about July 1, 2018, and September 20, 2022, Defendant ELPERIN knowingly prescribed controlled substances outside the usual scope of professional practice to co-conspirators, said substances being, in fact, for Defendant ELPERIN's own personal use, that is, intending that the co-conspirators would provide some, or all, of the prescribed controlled substances to ELPERIN herself, and without regard to any medical need of the patient.

43.    To do so, Defendant ELPERIN would issue a prescription for a controlled substance to a co-conspirator, together with the direction and the

INDICTMENT – 19

understanding that the co-conspirator would fill the prescription and then provide some, or all, of it back to Defendant ELPERIN or to a different co-conspirator.

44.    Defendant ELPERIN did so knowing both that physicians are not permitted to prescribe controlled substances to themselves, and to conceal other drug-seeking behavior.

45.    Additionally, between July 2018 and September 2022, Defendant ELPERIN left pre-signed prescription pads at Awake Health's front desk for co-conspirator employees to use to obtain controlled substances outside the course of professional practice and without any legitimate medical purpose.  Defendant ELPERIN told her employees that they could use these pre-signed prescription pads to write prescriptions for themselves for controlled substances, including Adderall, a Schedule II controlled substance, and other similar stimulants and controlled substances.

46.    Between on or about February 3, 2021, and on or about September 24, 2021, Defendant ELPERIN issued prescriptions for methylphenidate HCL, a Schedule II controlled substance, and outside the scope of professional practice, to R.J., a minor at the time, and furthermore directed R.J.'s mother, a co-conspirator known to the Grand Jury and identified herein as Co-Conspirator 1, that the prescriptions be filled and the methylphenidate HCL be provided to Defendant ELPERIN.  At Defendant ELPERIN's direction, for at least two of these prescriptions, Co-Conspirator 1 filled the prescriptions and provided the methylphenidate HCL to Defendant ELPERIN as instructed.

47.    Between at least on or about July 7, 2021, and on or about September 15, 2022, Defendant ELPERIN issued prescriptions for hydrocodone and oxycodone, both Schedule II controlled substances, without a valid medical purpose and outside the scope of professional practice to Co-Conspirator 1, an opioid addict.  On or about July 19, 2021, Defendant issued a prescription for dextroamphetamine-amphetamine, a Schedule II controlled substance, without a

INDICTMENT – 20

valid medical purpose and outside the scope of professional practice to Co-Conspirator 1, directing Co-Conspirator 1 to fill the prescriptions and provide the dextroamphetamine-amphetamine to Defendant ELPERIN.  At Defendant ELPERIN's direction, Co-Conspirator 1 followed the aforementioned instructions.

48.    On or about June 7, 2021, and on or about July 28, 2021, Defendant ELPERIN issued prescriptions for lorazepam, a Schedule IV controlled substance, without a valid medical purpose and outside the scope of professional practice, to Co-Conspirator 2, a co-conspirator known to the Grand Jury and an employee of Defendant ELPERIN, directing Co-Conspirator 2 to fill the prescriptions and provide the lorazepam to Defendant ELPERIN.  At Defendant ELPERIN's direction, Co-Conspirator 2 followed the aforementioned instructions and provided at least one of the lorazepam prescriptions to Defendant ELPERIN.

49.    On or about August 17, 2021, Defendant ELPERIN issued a prescription for hydrocodone-acetamin, a Schedule II controlled substance, without a valid medical purpose and outside the scope of professional practice, to Co-Conspirator 3, a co-conspirator known to the Grand Jury and an employee of Defendant ELPERIN, directing Co-Conspirator 3 to fill the prescription and provide the hydrocodone to Co-Conspirator 1.  At Defendant ELPERIN's direction, Co-Conspirator 3 followed the aforementioned instructions.

50.    On or about August 25, 2021, Defendant ELPERIN issued a prescription for dextroamphetamine-amphetamine, a Schedule II controlled substance, without a valid medical purpose and outside the scope of professional practice, to Co-Conspirator 4, a co-conspirator known to the Grand Jury and an employee of Defendant ELPERIN, directing Co-Conspirator 4 to fill the prescription and provide the dextroamphetamine-amphetamine to Defendant ELPERIN.  At Defendant ELPERIN's direction, Co-Conspirator 4 did so.

51.    On or about September 9, 2022, Defendant ELPERIN issued a prescription for hydrocodone, a Schedule II controlled substance, to Co-

INDICTMENT – 21

Conspirator 1's employee, with whom Defendant ELPERIN did not have a prior physician-patient relationship, with the understanding that the employee would provide the hydrocodone to Co-Conspirator 1. Co-Conspirator 1 accompanied the employee to Defendant ELPERIN's office to obtain this prescription. Defendant ELPERIN knew and intended that this was the purpose of the prescription.

All in violation of 21 U.S.C. §§ 846, 841(a)(1), 843(a)(3).

## COUNTS 15 - 17

### FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS

52.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 51 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth herein.

53.    On or about the dates set forth below, Defendant ELPERIN, knowingly and willfully made and used a materially false, fictitious, and fraudulent statement and representations in connection with the delivery of health care benefits, items, and services involving insurance, a health care benefit program, as defined in 18 U.S.C. § 24(b), in that she wrote false and fraudulent prescriptions for controlled substances to patients, employees, and others, outside the scope of professional practice and lacking a legitimate medical purpose, in that Defendant ELPERIN intended for the prescription, once filled, to be for Defendant ELPERIN's own use and benefit, each such statement constituting a separate count in the Indictment.

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 15 | Between on or about June 7, 2021, and on or about and July 28, 2021 | False and fraudulent prescription for lorazepam, a Schedule IV controlled substance, fraudulently issued for Co-Conspirator 2 but intended for Defendant ELPERIN's own personal use and paid for by Washington Medicaid, a health care benefit program. |

| 16 | On or about August 17, 2021 | False and fraudulent prescription for hydrocodone-acetamin, a Schedule II controlled substance, fraudulently issued for Co-Conspirator 3 but intended for the personal use of Co-Conspirator 1, and paid for by BCBS Teamsters, a private health care benefit program. |
| 17 | On or about August 25, 2021 | False and fraudulent prescription for dextroamphetamine-amphetamine, a Schedule II controlled substance, fraudulently issued for Co-Conspirator 4 but intended for Defendant ELPERIN's own personal use and paid for by Costco Health Insurance, a private health care benefit program. |

All in violation of 18 U.S.C. § 1035.

## COUNTS 18 - 22

## DISTRIBUTION OF A CONTROLLED SUBSTANCE BY A PRACTICIONER

54.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 53 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth herein.

55.    On or about each of the dates below, in the Eastern District of Washington, Defendant ELPERIN knowingly and intentionally distributed and dispensed controlled substances, outside the scope of professional practice and without a legitimate medical purpose, each occurrence of such distribution and dispensing constituting a separate count in the Indictment.

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 18 | Between on or about February 3, 2021, and on or about September 24, 2021 | methylphenidate HCL, a Schedule II controlled substance to Co-Conspirator 1, R.J., and Defendant ELPERIN herself. |

INDICTMENT – 23

| 19 | Between on or about June 7, 2021, and on or about July 28, 2021 | lorazepam, a Schedule IV controlled substance, to Co-Conspirator 2 and Defendant ELPERIN herself. |
| 20 | On or about July 19, 2021 | dextroamphetamine-amphetamine, a Schedule II controlled substance, to Co-Conspirator 1 and Defendant ELPERIN herself. |
| 21 | On or about August 17, 2021 | hydrocodone-acetamin, a Schedule II controlled substance, to Co-Conspirator 3, Co-Conspirator 1. |
| 22 | On or about August 25, 2021 | dextroamphetamine-amphetamine, a Schedule II controlled substance, to Co-Conspirator 4 and Defendant ELPERIN herself. |

All in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(2).

## COUNTS 23 - 26

### ACQUIRING OR OBTAINING A CONTROLLED SUBSTANCE BY MISREPRESENTATION, FRAUD, AND DECEPTION

56.    The Grant Jury re-alleges and incorporates by reference Paragraphs 1 through 55 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth herein.

57.    On or about the dates set forth below, Defendant ELPERIN acquired and obtained the controlled substances set forth below by misrepresentation, deception, and fraud, to wit, writing false and fraudulent prescriptions to patients, employees, and others with the direction and intention to use the false and fraudulent prescriptions to obtain the controlled substances for her own personal use.

| COUNT | DATE | DESCRIPTION |
| 23 | Between on or about February 3, 2021, and on or | methylphenidate HCL, a Schedule II controlled substance, using a false and fraudulent prescription written to R.J. |

| | | about September 24, 2021 | |
|---|---|---|---|
| | 24 | Between on or about June 7, 2021, and on or about July 28, 2021 | lorazepam, a Schedule IV controlled substance, using a false and fraudulent prescription written to Co-Conspirator 2. |
| | 25 | On or about July 19, 2021 | dextroamphetamine-amphetamine, a Schedule II controlled substance, using a false and fraudulent prescription written to Co-Conspirator 1. |
| | 26 | On or about August 25, 2021 | dextroamphetamine-amphetamine, a Schedule II controlled substance, using a false and fraudulent prescription written to Co-Conspirator 4. |

All in violation of 21 U.S.C. § 843(a)(3).

## NOTICE OF CRIMINAL FORFEITURE ALLEGATIONS

The Overview paragraphs and the Allegations set forth in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures.

Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of an offense(s) charged in violation of 18 U.S.C. § 1035, False Statements Relating to Health Care Matters, as set forth in this Indictment, the Defendant, ANNA ELPERIN, shall forfeit to the United States of America, property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, including, but not limited to:

Money Judgments

A sum of money in United States currency, representing the gross amount of proceeds obtained by the Defendant as a result of the false statements related to health care matters offense(s) in violation of 18 U.S.C. § 1035.

Pursuant to 21 U.S.C. § 853(a), upon conviction of an offense(s) charged in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), (b)(2), 843(a)(3) Conspiracy to Dispense Controlled Substances and to Acquire Controlled Substances by

Misrepresentation, Fraud, or Deception; and/or 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(2) Dispensing and Distribution of Controlled Substances, as set forth in this Indictment, the Defendant, ANNA ELPERIN, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense(s) and any property used or intended to be used, in any manner or part, to commit or to facilitate the commission of the offense(s).

With regard to substitute assets, if any property subject to forfeiture pursuant to 18 U.S.C. § 982(a)(7) and/or 21 U.S.C. § 853, as a result of any act or omission of the Defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said Defendant up to the value of the forfeitable property described herein; and/or, pursuant to 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said Defendant up to the value of the forfeitable property described herein, all pursuant to 18 U.S.C. §§ 982(a)(7), and 28 U.S.C. § 2461(c).

DATED this 14th day of November 2025.

A TRUE BILL

INDICTMENT – 26

S. Peter Serrano
United States Attorney

Courtney R. Pratten
Assistant United States Attorney

INDICTMENT – 27